IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **DARNELL TAYLOR**<br>3308 Parkford Manor Terrace #A<br>Silver Spring, MD 20904,<br><br> *Plaintiff*,<br><br>v.<br><br>**DISTRICT OF COLUMBIA<br>DEPARTMENT OF PUBLIC WORKS**<br>2000 14th Street, NW<br>Washington, DC 20009,<br><br> and<br><br>**DISTRICT OF COLUMBIA GOVERNMENT**<br>441 4th Street, NW, Suite 800 South<br>Washington, DC 20001,<br><br> *Defendants*. | Case Number: _____ |

**COMPLAINT & JURY DEMAND**

**COMES NOW**, Plaintiff Darnell Taylor ("Plaintiff"), by undersigned counsel, and files this Complaint for damages, costs and attorneys' fees, and pre-judgment and post-judgment interest, against Defendant District of Columbia Department of Public Works ("Defendant DPW") and Defendant District of Columbia Government ("Defendant District of Columbia"). This is an action under Title I of the Americans with Disabilities Act of 1990, as amended by the ADA Amendments Act of 2008, 42 U.S.C. §§12101 et. seq. ("ADA"); Title I of the Civil Rights Act of 1991, 42 U.S.C. §198la ("Civil Rights Act"); the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2615 (2012); and the DC Human Rights Act of 1977, as amended, §§2-1402.01 et. seq. ("DC Human Rights Act").

## PARTIES

1. Plaintiff is an adult currently residing in Maryland.

2. Defendant DPW is an entity registered to conduct business in the District of Columbia.

3. During all relevant time periods referenced in this Complaint, Defendant DPW was Plaintiff's employer for purposes of the ADA, the Civil Rights Act, the FMLA, and the DC Human Rights Act.

4. Defendant District of Columbia is a municipal corporation capable of being sued pursuant to D.C. Official Code §1-102.

5. Defendant DPW is an agency of Defendant District of Columbia.

## JURISDICTION AND VENUE

6. The Plaintiff alleges the Defendants discriminated against him in his employment because of his disability.

7. This action is authorized and instituted pursuant to: §107(a) of the ADA; §1981a(a)(2) of the Civil Rights Act; §2617(a)(2) of the FMLA; and §2-1403.16 of the DC Human Rights Act.

8. Venue is proper in this district pursuant to 28 U.S.C. §1391 because the Defendants are located within the district, and a substantial part of the events and omissions giving rise to this claim occurred in this judicial district.

## ADMINISTRATIVE REMEDIES

9. Plaintiff filed with the United States Equal Employment Opportunity Commission ("EEOC") a Charge of Discrimination (Charge No. 570-2022-01709) against Defendant DPW.

10. The EEOC issued a Dismissal and Notice of Rights ("Right to Sue Letter") dated January 23, 2023.

11. Plaintiff filed this action within 90 days of receipt of the Right to Sue Letter.

12. All conditions precedent to the institution of this lawsuit have been fulfilled.

## **FACTS**

13. Plaintiff was employed by Defendant DPW in its Solid Waste Management Administration ("SWMA") since October of 2002.

14. Plaintiff possesses a Commercial Driver's License ("CDL") that allows him to drive SWMA's trucks, and he worked in various capacities as a driver for DPW for more than twenty (20) years.

15. Plaintiff was initially hired by Defendant DPW as a "Motor Vehicle Operator."

16. Plaintiff was then promoted to "Road Sweeper Operator," a position he worked in from 2014 to 2019.

17. Effective September 1, 2019, Plaintiff was promoted from the position of Road Sweeper Operator to the position of "Sanitation Crew Chief."

18. Plaintiff's position as a Sanitation Crew Chief required that he "direct a crew of sanitation workers in the collection of solid waste" and that he be "responsible for the total performance of the crew."

19. The sanitation workers that Plaintiff directed were "responsible for all sanitation services on the assigned route," while Plaintiff was responsible for ensuring that the crew was "ready for duty" and had all the equipment and safety gear necessary to collect solid waste.

20. Plaintiff has a physical impairment, a congenital heart defect, which substantially limits his ability in the major life activity of engaging in strenuous activity for extended periods of time, and his ability to lift heavy objects weighing more than thirty (30) pounds.

21. Plaintiff first informed Defendant DPW of his disability on 12/09/2019, and provided DPW with written documentation from his medical provider, Dr. William Narracci, explaining that engaging in strenuous activity for extended periods, running, and lifting heavy objects could exacerbate his condition.

22. Plaintiff's disability did not prevent him from completing the essential functions of his job as Sanitation Crew Chief, and the documentation from his medical provider indicated that he could perform the essential functions of driving the truck and directing his crew.

23. Plaintiff successfully fulfilled his primary duties as a Sanitation Crew Chief for over two years after informing DPW of his serious medical condition, as his disability did not limit his ability to drive trucks or to direct his crew.

24. Plaintiff's disability only limited his ability to engage in the marginal/secondary duties of filling in for crew members when DPW was short staffed by riding on the back of the truck, jumping off and on at stops, and loading heavy trash into the vehicle.

25. In November of 2021, despite having been informed of his disability, Defendant DPW began demanding that Plaintiff perform the secondary duties for which his crew members were primarily responsible.

26. In response to these new demands, Plaintiff informed Michael Moore, the supervisor of his immediate supervisor, that he had a documented medical condition which limited his ability to engage in the strenuous activity of continuously getting off and on the trucks to load heavy trash in the vehicle.

27. Plaintiff again requested that he be accommodated by not being required to engage in the secondary duties that were the primary responsibility of his crew members.

28. Defendant DPW demanded that Plaintiff submit updated documentation from his medical provider to consider his request for a reasonable accommodation under the ADA, and Plaintiff complied by submitting documentation on 11/04/2021.

29. Additionally, Plaintiff applied for DC Medical Leave and FMLA benefits based on a second serious medical condition he has, gastroparesis, which causes occasional stomach pain and vomiting that interferes with his ability to function during flare-ups.

30. Defendant DPW informed Plaintiff that during the time it was reviewing his documentation, he was prohibited from working and would be forced to use his personal leave. At the time, Plaintiff did not have enough personal leave, and was forced to take leave without pay until DPW made a decision on whether he could return to work.

31. On December 2, 2021, Defendant DPW approved Plaintiff's request for Federal FMLA and DC Medical Leave benefits effective for the two-year period of 4/15/2021 through 4/14/2023 (collectively referred to as "FMLA benefits").

32. Plaintiff's FMLA benefits were permitted to be used on an intermittent basis as medically necessary, and his medical provider indicated that he would need to use 1-2 days per month for his gastroparesis flare-ups.

33. Plaintiff was out of work awaiting a decision from DPW from 11/04/21 to 2/14/22.

34. On February 11, 2022, Plaintiff was informed that he had been temporarily assigned to the CDL training facility for ninety (90) days, which Defendant DPW characterized as a "temporary accommodation" under the ADA.

35. Defendant DPW informed Plaintiff that at the end of the 90 days, his doctor would need to give a "letter of release" to work in his original position as Sanitation Crew Chief, and stated that it would not grant any accommodation for him to continue to work as a Sanitation Crew Chief.

36. Plaintiff requested that Defendant DPW offer him a different position, but DPW informed Plaintiff that it did not have any positions available, and instead suggested that he should apply for disability benefits, or apply for different positions in the DC government.

37. Plaintiff did not apply for any disability benefits given that the documentation from his medical provider clearly indicated that he was still able to perform the essential functions of his position, and only indicated that he would need to take 1-2 days off per month to manage his health issues.

38. Plaintiff applied for multiple positions with the DC government, but was not hired for any of them.

39. Plaintiff worked at the training facility in his temporary position until 5/01/2022, at which time he got sick with Covid-19.

40. During his two-week absence for Covid-19, Defendant DPW offered to extend Plaintiff's temporary assignment at the training facility, and Plaintiff accepted the extension.

41. Plaintiff returned to work at the training facility on 5/17/2022, but became ill with an episode of vomiting, and was required to use his FMLA leave for his gastroparesis.

42. After Plaintiff became ill at work with his documented medical condition, Defendant DPW refused to allow him to return to work and again demanded additional, duplicate paperwork from his medical provider which had already been provided in November of 2021.

43. Additionally, Defendant DPW demanded to speak to Plaintiff's doctor, and caused unnecessary delays in Plaintiff returning to work.

## COUNT I:
## UNLAWFUL INTENTIONAL DISCRIMINATION IN EMPLOYMENT IN VIOLATION OF THE ADA

44. Plaintiff incorporates the allegations stated in all the above paragraphs.

45. During his employment with Defendant DPW, Plaintiff began to experience discrimination on the basis of his disability.

46. The discrimination took place beginning in 2021 and has since continued.

47. Defendant DPW's discriminatory and retaliatory conduct toward Plaintiff included, but was not limited to: (a) a reduction in assignments of work, (b) unfair treatment compared to other employees in the same position, (c) intentionally demanding Plaintiff perform duties outside the scope of his essential functions as a pretense to make false claims that Plaintiff's disability prevented him from performing the essential functions of his job, (d) forcing Plaintiff to take leave without pay when he was willing and able to work, and (e) making unreasonable demands for copious amounts of paperwork to prove his disability when it already had sufficient documentation.

48. Plaintiff provided Defendant DPW with documentation from his medical provider stating that Plaintiff's disability did not prevent him from completing the essential functions of his job as a Sanitation Crew Chief, as Plaintiff was only partially limited in his ability to engage in strenuous physical activity, and limited in his ability to lift heavy objects weighing more than 30 pounds, neither of which are essential functions of his job.

49. After Plaintiff provided Defendant DPW with documentation from his medical provider, he successfully worked as a Sanitation Crew Chief for almost two years without issue.

50. The essential functions of the Sanitation Crew Chief are to drive the truck, which requires a degree of skill and expertise unique to that position because it requires a Commercial Driver's License (CDL).

51. The secondary functions of the Sanitation Crew Chief include occasionally getting off and on the back of the truck to assist the crew members with the collection of trash.

52. Plaintiff was able to complete the secondary functions of his position. Plaintiff could get off and on the truck intermittently, as stated by his physician, but simply could not get off and on the truck continuously while driving his assigned routes.

53. Additionally, Plaintiff could lift some trash bags to assist his crew members when they made stops where excessive trash was located, he simply could not lift the heaviest items.

54. Defendant DPW had enough personnel to perform the secondary functions which are the primary responsibility of the sanitation crew members, and it would not incur an undue burden to accommodate Plaintiff by allowing him to limit the amount of strenuous activity he engaged in and allowing him to lift the lighter trash bags rather than the heaviest items.

55. Additionally, Defendant DPW regularly allowed other employees in the position of Sanitation Crew Chief to drive truck routes that did not require them to engage in the secondary duties that are the primary responsibility of the crew members.

56. There are multiple drivers that never get off and on the trucks to load trash, yet Plaintiff was refused this reasonable accommodation based on discrimination for his disability.

57. Plaintiff was subject to discrimination and retaliation by Defendant DPW in violation of the ADA when it forced him to exhaust all of his paid leave as it considered his renewed request for a reasonable accommodation under the ADA after he had already been accommodated and worked without issue for two years.

58. Plaintiff was subject to discrimination and retaliation by Defendant DPW in violation of the ADA when it forced him to remain out of work on involuntary leave without pay as it considered his renewed request for a reasonable accommodation under the ADA despite the fact that his doctor provided documentation stating that he could perform the essential functions of his job.

59. By placing Plaintiff on forced leave even though he was fit to do the work, Defendant DPW discriminated against Plaintiff based on his disabilities.

60. Given that Plaintiff was unable to earn income from Defendant DPW, he obtained other employment, but he now earns substantially less than he did as a Sanitation Crew Chief.

61. Additionally, Plaintiff lost entitlement to retirement and pension benefits to which he would have become entitled if he were allowed to continue to work for DPW.

62. Defendant DPW did not offer Plaintiff a reasonable accommodation by taking leave without pay given that: (a) he did not need to take leave because he was able to work, and (b) he was not allowed to return to work after taking the leave—instead, he was effectively terminated because he is not permitted to return to his position as Sanitation Crew Chief.

63. During the time period Defendant DPW demanded that Plaintiff submit unnecessary paperwork and then prevented him from coming to work, Plaintiff suffered severe emotional distress as he was unable to earn income based on the false premise that he could not complete his duties as Sanitation Crew Chief.

64. Plaintiff suffered headaches, lost sleep, and became depressed at the prospect of losing his employment and being unable to earn a living all based on DPW's discrimination against him based on his disability.

65. Plaintiff was able and willing to work, he made multiple requests to come back to work, but DPW just refused to let him do so despite having all the necessary paperwork.

66. Being prevented from working to earn a living was very distressing to Plaintiff, a man who devoted more than 20 years working as a loyal employee of DPW.

67. Plaintiff's emotional distress was exacerbated by the fact that after becoming ill at work on May 17, 2022, Defendant DPW took a photograph of him, DPW employees present did not offer him any assistance of any kind, and his supervisor at DPW feeling "embarrassed" by the fact that Plaintiff became ill while in uniform.

68. Defendant DPW employees intentionally discriminated against Plaintiff and caused him emotional distress by ignoring the fact that Plaintiff's disability did not prevent him from doing his job as a Sanitation Crew Chief, and instead substituting their own personal, non-medically based opinions that Plaintiff was "too sick" to work, as evidenced by DPW's repeated suggestion that Plaintiff apply for social security disability benefits to which he would not be legally entitled.

  **WHEREFORE** Plaintiff requests judgment for actual damages for lost income, reduced income, future pecuniary losses, liquidated damages, emotional distress damages, punitive damages, costs and attorney's fees, in amounts to be determined at trial, against Defendants.

**COUNT II:**
**UNLAWFUL INTENTIONAL DISCRIMINATION IN EMPLOYMENT IN VIOLATION OF THE CIVIL RIGHTS ACT**

69. Plaintiff incorporates the allegations stated in all the above paragraphs.

70. The conduct of Defendant DPW violates Title I of the ADA because Plaintiff's disability does not prevent him from performing the essential functions of his job as a Sanitation

Crew Chief, yet Defendant DPW effectively terminated him under the false claim that he could not perform his duties.

71. Despite the fact that Plaintiff provided Defendant DPW with documentation from his medical provider which stated that his disability did not limit him from doing his essential functions as a Sanitation Crew Chief, Defendant DPW ignored the information from the medical professional and made its own uninformed, discriminatory decision that Plaintiff could not perform his duties.

72. After having worked for Defendant DPW for almost 20 years, including two years he worked with his disability without issue, Plaintiff was mistreated and discarded, causing him to suffer severe emotional distress as he was deprived of the ability to earn income using his skills as a CDL driver, and lost significant income.

73. Such unlawful employment practices proximately caused Plaintiff to suffer emotional injuries for which he claims damages.

> **WHEREFORE** Plaintiff requests judgment for actual damages for lost income, reduced income, future pecuniary losses, liquidated damages, emotional distress damages, punitive damages, costs and attorney's fees, in amounts to be determined at trial, against Defendants.

## COUNT III:
## FMLA PROHIBITED ACTS OF INTERFERENCE & RETALIATION

74. Plaintiff incorporates the above alleged facts in support of this Count.

75. Plaintiff was entitled to FMLA leave as evidence by Defendant DPW's granting of his request.

76. Plaintiff's FMLA leave allowed him to take 1-2 days off per month to deal with the occasional flare-ups of his gastroparesis.

77. When Plaintiff became ill at work on 5/17/22 with his documented medical condition and needed to take off from work early, he engaged in a protected activity.

78. Defendant DPW willfully interfered with Plaintiff's right to take intermittent leave when it prohibited him from returning to work after he became ill at work on 5/17/22.

79. Plaintiff simply needed to take the 1-2 days off for illness, but Defendant DPW did not allow him to do so because DPW treated his taking of leave as a demonstration he was unable to work at all, and responded by demanding that he obtain new paperwork from his physician stating that he was "clear" to return to work.

80. A reasonable employee would have found Defendant DPW's demand for new paperwork from Plaintiff's physician as a condition precedent to returning to work as a materially adverse action.

81. Plaintiff complied with DPW's request and submitted new paperwork from his physician, but Defendant DPW still refused to allow him to return to work in his position as Sanitation Crew Chief.

82. In response to Plaintiff utilizing his FMLA leave that it had granted when he left work early on 5/17/22, Defendant DPW effectively terminated Plaintiff and prevented him from ever coming back to work in any position at DPW.

83. Defendant DPW's refusal to allow Plaintiff to return to work was an adverse action taken in response to Plaintiff's use of his FMLA leave.

    **WHEREFORE** Plaintiff requests judgment for actual damages for lost income, reduced income, future pecuniary losses, liquidated damages, emotional distress damages, punitive damages, costs and attorney's fees, in amounts to be determined at trial, against Defendants.

## COUNT IV:
## <u>UNLAWFUL INTENTIONAL DISCRIMINATION IN EMPLOYMENT IN VIOLATION OF THE DC HUMAN RIGHTS ACT</u>

84. Plaintiff incorporates the allegations stated in all the above paragraphs.

85. When Defendant DPW engaged in the actions described above, it violated the protections of the DC Human Rights Act which prohibit employers from discriminating against employees on the basis of a disability.

   **WHEREFORE** Plaintiff requests judgment for actual damages for lost income, reduced income, future pecuniary losses, liquidated damages, emotional distress damages, punitive damages, costs and attorney's fees, in amounts to be determined at trial, against Defendants.

## PLAINTIFF REQUESTS A TRIAL BY JURY

Respectfully submitted,

**Montero Law Group, LLC**

_____/s/_____
Michael A. Ostroff, Esq. (Bar ID MD20903)
1738 Elton Road, Suite 105
Silver Spring, MD  20903
Tel: 301.588.8100; Fax: 301.588.8101
mostroff@monterolawgroup.com
*Counsel for Plaintiff*